**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **SYNOPSYS, INC.,** )  | |
| **Plaintiff,** ) | |
|  ) | **Case No. 1:17-cv-517** |
| **v.** ) | |
|  ) | |
| **JOSEPH MATAL,**[1] ***et al.,*** ) | |
| **Defendants.** ) | |

# <u>MEMORANDUM OPINION</u>

This is an Administrative Procedure Act ("APA")[2] appeal from a decision by the Director

of the United States Patent & Trademark Office ("PTO"), vacating an order granting *ex parte*

reexamination of Patent No. 6,240,376 ("'376 Patent"), owned by intervenor defendant, Mentor

Graphics Corporation ("Mentor").  Specifically, the PTO Director vacated its order granting *ex*

*parte* reexamination of the '376 Patent on the ground that the statutory estoppel provisions of the

Leahy Smith America Invents Act ("AIA")[3] prohibited Synopsys, Inc. ("Synopsys") from

bringing its reexamination request.  The PTO and Mentor seek dismissal of this appeal on several

grounds, including: (i) the Director's decision is not "final agency action" under the APA; and

(ii) the substantive statute precludes judicial review of the Director's decision.  These issues have

been fully briefed and argued and are now ripe for disposition.  For the reasons that follow, the

appeal must be dismissed.

---

[1] Although plaintiff initially brought this case against Michelle Lee as Director of the United States Patent &
Trademark Office, it is appropriate to take judicial notice of the fact that Joseph Matal has replaced Michelle Lee as
the current Director. *See* Rule 201, Fed. R. Evid.

[2] 5 U.S.C. §§ 701-06.

[3] 35 U.S.C. §§ 321 *et seq.*

# I.

Because the issues presented involve a third party's ability to challenge the validity of issued patents, it is appropriate to begin with a description of the two mechanisms Congress has established for third parties to challenge issued patents. Congress established the first mechanism—the *ex parte* reexamination process—when it enacted the 1980 Act to Amend the Patent and Trade Mark Laws.[4] The *ex parte* reexamination process allows a third party to request that the PTO reexamine a patent on the ground that there is a substantial new question about its patentability. *See* 35 U.S.C. § 302. If the Director of the PTO determines no substantial new question of patentability exists, that decision is "final and nonappealable." 35 U.S.C. § 303(c). If, on the other hand, the Director determines that a substantial new question of patentability exists, the Director orders a review of the patent via an *ex parte* reexamination proceeding. *See* 35 U.S.C. §§ 303-04. At that point, the patent owner may file a statement on the new question, and the challenger may file a reply to any statement filed by the patent owner. *See* 35 U.S.C. § 304. A patent examiner then conducts a reexamination according to the procedures established for initial examination. *See* 35 U.S.C. § 305. Only the patent owner can appeal the examiner's final determination regarding the patent's validity to the Patent Trial and Appeal Board ("PTAB") and then to the United States Court of Appeals for the Federal Circuit. *See* 35 U.S.C. § 306.[5]

---

[4] 35 U.S.C. § 301 *et seq.*

[5] *See also Syntex (U.S.A.) Inc. v. U.S. Patent & Trademark Off.*, 882 F.2d 1570, 1576 (Fed. Cir. 1989) ("Although a third-party requester has some rights vis-a-vis the PTO, from our review of the entirety of the reexamination provisions, we conclude that such a requester has no right to challenge the validity of the Reexamination Certificate by suit against the PTO.").

In 1999, Congress created a second mechanism through which third parties can challenge issued patents. That process, now known as inter partes review,[6] gives a third party challenger the ability to participate more extensively in the patent review process. Specifically, the challenger continues to participate in the process after the Director institutes inter partes review, and the parties can engage in discovery, motions practice, and witness examinations. *See* 37 C.F.R. § 42. The third party challenger also has the right to appeal a final written decision of the PTAB to the United States Court of Appeals for the Federal Circuit. *See* 35 U.S.C. § 319.

These two mechanisms for review of a patent's validity—*ex parte* reexamination and inter parties review—interact in an important way. Specifically, a third party challenging a patent in the inter partes review process is estopped from raising, in any later proceeding before the PTO, any ground the third party challenger raised or reasonably could have raised in the inter partes process. *See* 35 U.S.C. § 315(e). Accordingly, a third party challenger submitting a request for *ex parte* reexamination must certify, as a part of its request, that the statutory estoppel provisions do not prohibit the challenger from filing the *ex parte* reexamination request. *See* 37 C.F.R. § 1.510(b)(6).[7] If the third party challenger does not include this certification, or if the certification is not accurate, then the request will not be deemed filed and the Director will not institute an *ex parte* reexamination proceeding. *See* 37 C.F.R. § 1.510(c).

## II.

In 2012, Synopsys filed a petition with the PTO requesting inter partes review of several claims in Mentor's '376 Patent. Specifically, Synopsys challenged claims 1 and 28 of the '376

---

[6] Originally named "inter partes reexamination," Congress, in 2011, enacted the AIA, renaming the process "inter partes review."

[7] Specifically, 37 C.F.R. § 1.510(b)(6) provides that "any request for reexamination must include . . . a certification by the third party requester that the statutory estoppel provisions of 35 U.S.C. § 315(e)(1) or 35 U.S.C. § 325(e)(1) do not prohibit the requester from filing the ex parte reexamination request."

Patent on the basis of prior art references, including: U.S. Patent Nos. 5,530,841; 5,680,318; and 5,748,488 (collectively, "Gregory"). The PTO Director instituted an inter partes review proceeding on some of Synopsys's claims based on the "Gregory" references, and, at the conclusion of the proceeding, the PTAB issued a final written decision, upholding the validity of claims 1 and 28 of the patent against the "Gregory" references.

Thereafter, in 2016, Synopsys requested *ex parte* reexamination of several claims in the '376 Patent, including the same two claims—claims 1 and 28—that were challenged in the 2012 inter partes review process. Synopsys based its challenge of claims 1 and 28 on two prior art references different from the "Gregory" references, namely U.S. Patent No. 6,182,247 ("Herrmann") and U.S. Patent No. 6,317,860 ("Heile"). Also, Synopsys certified that it was not estopped from filing the request pursuant to U.S.C. § 315(e). On November 8, 2016, the PTO issued an order granting reexamination of claims 1 and 28 of '376 Patent based on the "Herrmann" and "Heile" references.

After the order issued, Mentor challenged Synopsys's estoppel certification, arguing that Synopsys reasonably could have raised the "Herrmannn" and "Heile" references in the prior, inter partes review proceeding. The PTO agreed with Mentor and determined that because Synopsys could have raised the "Herrmannn" and "Heile" references in the inter partes process, Synopsys was estopped from challenging claims 1 and 28 of the '376 Patent based on those references in an *ex parte* reexamination request. Accordingly, on December 15, 2016, the PTO vacated the prior order granting reexamination and gave Synopsys the opportunity to file a corrected request and certification.

Synopsys availed itself of this opportunity and subsequently filed a corrected *ex parte* reexamination request, including challenges to claims 24, 26, and 27 of the '376 Patent, but

omitting the challenges to claims 1 and 28. The Director granted reexamination with respect to the remaining claims, and the *ex parte* proceeding on those claims is ongoing.

Shortly after filing its corrected request, Synopsys initiated this action, pursuant to the APA, to challenge the Director's determination that Synopsys was estopped, pursuant to § 315(e), from requesting *ex parte* reexamination of claims 1 and 28 on the basis of the "Herrmann" and "Heile" references. On May 26, 2017, Synopsys filed a motion for summary judgment, arguing that the Director's estoppel determination was contrary law because § 315(e) bars only challenges based on prior art references that were actually raised in the inter partes review petition and that could have been raised in the inter partes review proceeding. The PTO and Mentor each filed cross-motions for summary judgment and/or motions to dismiss, contending that (i) there is no jurisdiction to address this issue; and (ii) even assuming the issue can be addressed, the PTO correctly interpreted § 315(e) to apply to challenges based on prior art references that could have been raised in the petition seeking inter partes review. The threshold question is thus whether judicial review of the Director's decision is permitted. The PTO and Mentor argue there is no jurisdiction because: (i) the Director's estoppel determination is not final agency action under the APA; and (ii) the *ex parte* reexamination statutory scheme does not allow judicial review of the Director's estoppel determination. Synopsys, in response, contends (i) that the Director's action is final agency action for APA appeal purposes; and (ii) that the statute does not bar judicial review.

## III.

### A.

Analysis of this issue properly begins with the question whether the Director's order vacating reexamination is "final agency action" under the APA. In this respect, the APA allows

persons "adversely affected or aggrieved by agency action" to challenge and seek judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. By contrast, as the statute explicitly notes, "preliminary, procedural, or intermediate agency action" is not "directly reviewable." *Id.* The rationale of the APA's finality requirement is clear; it allows the agency "an opportunity to correct its own mistakes and to apply its expertise" while avoiding "piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *FTC v. Std. Oil Co. of Cali.*, 449 U.S. 232, 242 (1980). In this regard, the Supreme Court has recognized that finality requires that two conditions be met: (i) the action "must mark the 'consummation' of the agency's decisionmaking process;" and (ii) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177 (1997).[8] Thus, "the core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992).

Given these principles, the question whether the Director's estoppel decision in this case is final for APA purposes is a close one. On the one hand, the Director's decision plainly did not terminate the administrative proceedings; instead, the decision allowed Synopsys to file a new request for reexamination with a proper certification pursuant to PTO regulations. *See* A1686.[9] Synopsys chose to do so,[10] and as a result, the *ex parte* reexamination proceeding with respect to the validity of the '376 Patent is ongoing. Whereas "a final order typically 'disposes of all issues

---

[8] *See also Automated Merch. Sys., Inc. v. Lee*, 782 F.3d 1376, 1380 (Fed. Cir. 2015).

[9] S*ee* 37 C.F.R. 1.510(c) (providing that where *ex parte* reexamination request does not meet requirements, requester is "generally . . . given an opportunity to complete the request within a specified time").

[10] *See* A1693 (Synopsys's corrected request for *ex parte* reexamination).

as to all parties,'"[11] the decision here affected only two of Synopsys's challenges to the '376 Patent based on two prior art references—the "Herrmann" and the "Heile." Because the remaining challenges are ongoing, the Director's estoppel decision does not appear to be the consummation of the agency's decisionmaking process.

But this does not end the finality analysis. It is important to note that courts, grappling with whether an agency order is final for APA appellate purposes, have found it instructive to invoke an analogy to the final judgment rule under 28 U.S.C. § 1291.[12] And in this regard, courts have uniformly held that orders dismissing cases without prejudice are not final; the order becomes final and appealable "[o]nly if the plaintiff cannot amend or declares his intention to stand on his complaint." *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir. 1976).[13] Here, the PTO afforded Synopsys the opportunity to amend its request and Synopsys elected to do so. The logic of § 1291, applied here, suggests the Director's order never became final because, by analogy to the final judgment rule, the proceeding has not ended, but is ongoing. In sum, the fact that Synopsys was afforded the opportunity to amend its request and the fact that the reexamination proceeding is ongoing with respect to the '376 Patent suggest that the Director's estoppel determination was not the consummation of the agency's decisionmaking process and thus cannot be final agency action.

---

[11] *CSX Transp., Inc. v. Surface Transp. Bd.*, 774 F.3d 25, 28 (D.C. Cir. 2014); *see also Alaska v. FERC*, 980 F.2d 761, 764 (D.C. Cir. 1992) ("It is … usually preferable to require the parties to wait for appellate review until the lawsuit is ultimately resolved—to insist on the standard of one case, one appeal. This is as desirable in cases coming from the administrative agencies as it is in cases from the district courts.").

[12] Like § 704 of the APA, 28 U.S.C. § 1291 "reflect[s] the reasoned policy judgment that the judicial and administrative processes should proceed with a minimum of interruption." *DRG Funding Corp. v. Se'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1220 (D.C. Cir. 1996) (Williams, J., concurring); *see also Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 288 (5th Cir. 199).

[13] *See also Azar v. Conley*, 480 F.2d 220 (6th Cir. 1973); *Grantham v. McGraw-Edison Co.*, 444 F.2d 210 (7th Cir. 1971); *Hurst v. California*, 451 F.2d 350 (9th Cir. 1971).

By contrast, the D.C. Circuit has recognized that what matters in a finality analysis is not "whether the [challenged] order is the last administrative order contemplated by the statutory scheme, but rather whether it imposes an obligation or denies a right with consequences sufficient to warrant review." *Envtl. Def. Fund, Inc. v. Ruckelshaus*, 439 F.2d 584, 589 n.8 (D.C. Cir. 1971).[14] And, as Synopsys correctly notes, the administrative proceeding with respect to the narrow question at issue here—whether Synopsys is estopped from challenging claims 1 and 28 of the '376 Patent based on the "Herrmannn" and "Heile" references—is complete. Moreover, as Synopsys also notes, there was nothing tentative or preliminary about the Director's decision on this narrow question; the Director determined that the *ex parte* reexamination request was not entitled to a filing date, memorialized that determination in an order, and vacated the original order instituting a proceeding. *See Sys. Application & Techs., Inc.*, 691 F.3d at 1384 (concluding "there was nothing interlocutory, uncertain, or tentative" about the Army's decision where the Army "memorialized its decision to take corrective action in a letter" and "set in motion several irretrievable legal consequences").

It also appears that at no time in the ongoing *ex parte* reexamination proceeding will the PTO reconsider its estoppel decision, and therefore Synopsys will have no additional opportunity to argue the merits of its position before the PTO. Thus, this case stands in stark contrast to cases where ongoing agency proceedings might obviate the need for judicial review. *Compare Heinl v. Godici*, 143 F. Supp. 2d 593, 597-98 (E.D. Va. 2001) (determining that the PTO's decision to allow *ex parte* reexamination of a patent is not final "because there are at least three

---

[14] *See also Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1384 (Fed. Cir. 2012).

points in the reexamination process where the patentee 'might prevail in its attempts to convince the examiner of the validity of the patent'").[15]

Also noteworthy is that this decision imposes legal consequences on Synopsys by prohibiting Synopsys from bringing an *ex parte* challenge to claims 1 and 28 of the '376 Patent based on these two prior art references. In so doing, the Director's estoppel determination alters the legal landscape in which Synopsys must proceed. *See Bennett*, 520 U.S. at 177 (noting finality requires that the action be a decision from which "rights or obligations are determined" or from which "legal consequences will flow"). In short, the fact that the agency has had its last word with respect to the challenges to the two claims at issue in this appeal certainly suggests the Director's estoppel determination is final agency action.

In sum, the arguments for and against finality in this case are substantial, and it must be said that the finality question here is a close one. In the end, however, it is unnecessary to reach or decide this close question because, as described below, the *ex parte* reexamination statutory scheme precludes judicial review of the Director's § 315(e) estoppel determination.

**B.**

The APA allows for judicial review of final agency action, except to the extent "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). In determining whether a statute precludes judicial review, the Supreme Court applies a "strong presumption in favor of judicial review." *Cuozzo Speed Techs. v. Lee*, 136 S. Ct. 2131, 2140 (2016) (internal quotation marks omitted) (quoting *Mach Mining LLC v. EEOC*, 135 S. Ct. 1646, 1651 (2015)). This presumption may be overcome by "clear and

---

[15] *Compare also CSX Transp. Inc.*, 774 F.3d at 28 (finding an initial decision in a bifurcated proceeding was not final because the plaintiff "may well emerge victorious from the [second] phase, leaving nothing for them to appeal"); *DRG Funding Corp.*, 76 F.3d at 1215 ("When completion of an agency's processes may obviate the need for judicial review, it is a good sign that an intermediate agency decision is not final.").

convincing[16] indications, drawn from specific language, specific legislative history, and inferences of intent drawn from the statutory scheme as a whole, that Congress intended to bar review." *Id.* at 2140 (internal quotation marks omitted) (quoting *Block*, 467 U.S. at 349-50).[17] These principles, applied here, compel the conclusion that Congress intended to preclude judicial review of the Director's § 315(e) estoppel determination.

Analysis of this question properly begins with the statutory text, which provides, in relevant part, that "[a] determination by the Director . . . that no substantial new question of patentability has been raised will be final and nonappealable." 35 U.S.C. § 303(c). This text plainly makes nonappealable the Director's substantive decision not to institute an *ex parte* reexamination proceeding on the ground that "no substantial new question of patentability has been raised." And the PTO contends that if the challenger could have raised a prior art reference in a previous, inter partes review proceeding, it follows that there is no substantial new question of patentability in the later, *ex parte* proceeding. Although the PTO's argument has some force, Synopys argues that the "narrow, but clear focus of the statute's text"[18] refers only to determinations that "no substantial new question of patentability has been raised," not to predicate estoppel determinations. It is thus arguably unclear from the text of § 303(c) whether Congress intended to make nonappealable decisions other than the Director's final decision not to institute an *ex parte* reexamination proceeding because no new substantial question of

---

[16] In *Block v. Community Nutrition Institute*, the Supreme Court clarified the clear and convincing standard:

> In the context of preclusion analysis, the "clear and convincing evidence" standard is not a rigid evidentiary test but a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling. That presumption does not control in cases . . . [where] the congressional intent to preclude judicial review is "fairly discernible" in the detail of the legislative scheme.

467 U.S. 340, 351 (1984).

[17] *See also Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) (holding that "a showing of clear and convincing evidence of . . . legislative intent" is required to find that a statute precludes judicial review).

[18] *Heinl*, 143 F. Supp. 2d at 596.

patentability exists. But this observation does not end the analysis, as the Supreme Court has recognized that where the plain text of a provision is ambiguous, that provision "is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *King v. Burwell*, 135 S. Ct. 2480, 2492-93 (2015) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). Accordingly, it is appropriate to examine the statutory scheme to determine whether Congress intended to preclude review of preliminary or predicate decisions, such as the estoppel determination at issue here.

The statutory scheme for *ex parte* proceedings is comprehensive and demonstrates clearly that Congress intended to preclude judicial review of any and all decisions not to institute an *ex parte* reexamination proceeding, including those based on estoppel determinations. To begin with, the statutory scheme reflects that Congress carefully designed the *ex parte* reexamination process to limit the role of third party challengers to those activities specifically designated in the statute. Although any person can request an *ex parte* reexamination of a patent, once the request is submitted, the third party's role is highly circumscribed. *See* 35 U.S.C. §§ 301-03. If the Director determines there is no substantial new question of patentability and does not institute an *ex parte* reexamination proceeding, the challenger cannot appeal the Director's decision. *See* 35 U.S.C. § 303(c).[19] If, on the other hand, the Director decides to institute *ex parte* reexamination, the challenger's participation in the *ex parte* process is limited to filing a reply to any statement submitted by the patent owner. *See* 35 U.S.C. § 304.[20] Moreover, only the patent owner is

---

[19] *See also Heinl*, 143 F. Supp. 2d at 596 (noting that the plain text of § 303(c) bars judicial review of a denial of a petition for reexamination not the grant of such a petition).

[20] *See also Joy Mfg. Co. v. Nat'l Mine Serv. Co.*, 810 F.2d 1127, 1130 (Fed. Cir. 1987) (noting that once the third party challenger files a reply, the challenger "has no future role to play in the *ex parte* proceeding"); 37 C.F.R. § 1.550(g) ("The active participation of the *ex parte* reexamination requester ends with the reply pursuant to § 1.535, and no further submissions on behalf of the reexamination requester will be acknowledged or considered.").

permitted to appeal a final determination by the PTO in the *ex parte* reexamination proceeding; the third party challenger has no right to appeal that determination. *See* 35 U.S.C. § 306.[21] Put simply, in keeping with the essentially *ex parte* nature of the proceeding, the statutory scheme reflects Congress's clear intent to limit the role of third party challengers in this proceeding and that limitation also precludes challengers from appealing the Director's predicate estoppel determination under § 315(e).

Third party challengers who participate first in inter partes review have an even more limited role in *ex parte* reexaminations. Because inter partes review affords third party challengers additional procedural rights and opportunities to participate in a patent challenge, Congress imposed a cost on challengers who exercise those rights. Specifically, a third party challenger who participates in inter partes review "may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(1). If the Director determines that third party challengers are estopped, those challengers cannot participate in an *ex parte* reexamination proceeding at all. In sum, third party challengers who avail themselves of the inter partes review process face an additional procedural hurdle that limits their ability to participate in an *ex parte* reexamination.

This careful and comprehensive scheme would be undermined if third party challengers, such as Synopsys, were permitted to appeal the Director's predicate decisions, such as estoppel determinations under § 315(e), in determining whether to institute *ex parte* reexamination. To begin with, this interpretation of the statute would afford third party challengers who choose to participate first in inter partes review even more procedural rights than third party challengers

---

[21] *See also Syntex*, 882 F.2d at 1572 (holding that third party challengers cannot appeal adverse decisions on patentability in the *ex parte* reexamination process).

involved only in an *ex parte* reexamination. That is, these repeat challengers would have the opportunity to appeal the Director's estoppel decisions, an opportunity unavailable to third party challengers involved only in an *ex parte* reexamination proceeding. This outcome plainly contradicts Congress's efforts to impose costs on repeat challengers via the § 315 estoppel provisions. Accordingly, it follows that Congress could not have intended that interpretation. *See Block*, 467 U.S. at 348 (finding that a statute precluded judicial review where allowing review "would severely disrupt [the] complex and delicate administrative scheme" by allowing individuals to evade statutory requirements).

Moreover, Synopsys's reading of the statute would lead to anomalous results and would create internal inconsistencies within the statutory scheme. Specifically, it would be anomalous to permit third party challengers to appeal the Director's decision not to institute an *ex parte* reexamination on preliminary procedural grounds, such as an estoppel determination under § 315(e), while simultaneously prohibiting challengers from appealing essentially same decision— a decision not to institute an *ex parte* reexamination—on substantive grounds. In other words, given that Congress has made clear that the Director's decision not to initiate ex parte proceedings is final and nonappealable, it would be odd to attribute to Congress an intent to allow challengers to appeal the Director's predicate decisions, including § 315(e) estoppel determinations, that have essentially the same effect as the decision not to initiate proceedings. Similarly, under Synopsys's theory, third party challengers could appeal preliminary procedural decisions related to the initiation of an *ex parte* reexamination proceeding, even though these same challengers could never appeal the PTO's final written decision on the validity of the patent. In short, Synopsys's reading creates internal inconsistencies and anomalous results by permitting third party challengers to appeal a decision not to institute an *ex parte* proceeding

based on a procedural determination involving the agency's interpretation of its governing statute, while precluding those challengers from appealing that same decision on the basis of a substantive determination. Because the Supreme Court has made clear that "absurd results are to be avoided and internal inconsistencies in the statute must be dealt with,"[22] Synopsys's interpretation of the statute is unpersuasive.

Judicial review of preliminary estoppel determinations would also be inconsistent with the objectives of the patent statutes. The purpose of the patent statutes is to provide efficient means by which to challenge the validity of patents outside of the formal litigation context. *See, e.g.*, *Medtronic, Inc. v. Lee*, 151 F. Supp. 3d 665, 670-71 (E.D. Va. 2016) (noting that the inter partes review process "was meant to allow the [PTAB] to fully resolve [sic] petitions for patent reexamination, resulting in fewer cases in the district courts"); *Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 921 (E.D. Va. 2013) (recognizing that the AIA demonstrates an "overarching congressional intent to streamline administrative review" and "minimize lengthy, costly, and protracted federal litigation"). Indeed, the 2011 AIA expanded the opportunities for parties to participate in inter partes review on "the expectation that [the PTO] would serve as an effective and efficient alternative to often costly and protracted district court litigation." H.R. Rep. No. 112–98, at 45 (2011), 2011 U.S.C.C.A.N. 67, 76 (Conf. Rep.). To allow parties to appeal the Director's estoppel determinations under § 315(e) would reduce the efficiency of those proceedings and inject the federal courts into ongoing agency adjudication.

The Federal Circuit's interpretation of similar statutory provisions further buttresses this conclusion. In *Syntex (U.S.A.) Inc. v. U.S. Patent & Trademark Office*, the petitioner, a third-party challenger in the *ex parte* reexamination process, attempted to appeal the PTO's final

---

[22] *United States v. Turkette*, 452 U.S. 576, 580 (1981) (citing *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643 (1978); *Comm'r v. Brown*, 380 U.S. 563, 571 (1965)); s*ee also Chisom v. Roemer*, 501 U.S. 380, 402 (1991) (rejecting a statutory interpretation because "[i]t is unlikely that Congress intended such an anomalous result.").

decision not to cancel patent claims on the ground that the PTO failed to abide by certain procedural requirements during its *ex parte* reexamination process. The Federal Circuit, relying on the "essentially *ex parte* nature of reexamination" and the "clear, comprehensive statutory scheme," rejected Syntex's theory

> that the patent statute impliedly grants . . . a third-party requester . . . a right to review of the PTO's final decision . . . where it is alleged that the reexamination proceeding was not conducted in accordance with PTO regulations and established procedures.

*Syntex*, 882 F.2d at 1572-73. Analogously Synopsys here is attempting to appeal a decision not to institute an *ex parte* reexamination proceeding based on the Director's alleged failure to abide by procedural requirements in the course of reaching that decision. But, as in *Syntex*, the "essentially *ex parte* nature of reexamination" and the "clear, comprehensive statutory scheme" suggest Congress intended to preclude all appeals from the Director's decisions not to institute an *ex parte* reexamination proceeding, regardless of whether the Director based that decision on substantive or procedural grounds.

Synopsys's arguments to the contrary are unavailing. First, Synopsys contends that § 303(c) should be limited to its plain text, which precludes judicial review of a decision that "no new substantial question of patentability exists," but does not explicitly address whether estoppel decisions are appealable. This argument is also unpersuasive; it fails to take into account the structure of the *ex parte* reexamination scheme, its objectives and legislative history. Nor is this unimportant, as the Supreme Court has made clear that "[w]hether and to what extent a particular statute precludes judicial review is determined *not only* from its express language, *but also* from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block*, 467 U.S. at 345 (citations omitted) (emphasis added). The comprehensive *ex parte* statutory scheme clearly compels the conclusion that Congress

intended to preclude judicial review, not only of the decision that no new substantial question exists, but also of the estoppel determination under § 315(e).

Synopsys also argues that the Federal Circuit has expressly endorsed judicial review in cases where the PTO institutes an *ex parte* reexamination proceeding but fails to conclude that proceeding. *See Syntex*, 882 F.2d at 1574 (noting that the Federal Circuit, in *Ethicon v. Quigg*, "recognized, *sub silencio*, that the requester had a right to have a reexamination proceed, once instigated, and that the district court had jurisdiction to vindicate that right"). As the *Syntex* court noted, however, the Federal Circuit in *Ethicon* did not discuss the jurisdictional issues presented here. *Id.* at 1574 (citing *Ethicon v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988)). Moreover, the PTO decision at issue in that case is readily distinguishable. There, the Director instituted an *ex parte* reexamination proceeding and then subsequently stayed that proceeding pending the outcome of a state court case. Here, by contrast, the Director instituted an *ex parte* reexamination proceeding and then vacated that proceeding, determining that the PTO should never have instituted *ex parte* reexamination proceeding. Because the Director vacated the reexamination order in this case, it is as if the reexamination proceeding was never commenced. Notably, the Federal Circuit has not recognized availability of judicial review where, as here, the reexamination was never commenced, and the third party challenger, unlike *Ethicon*, has no right to have the reexamination process proceed.

Finally, Synopsys attempts to evade the absence of judicial review of the estoppel decision by challenging the PTO's "policy and practice" of applying estoppel, under § 315(e), "where a party seeking *ex parte* reexamination previously sought inter partes review of the same patent claim and did not raise the newly cited prior art in its previous petition for inter partes review." Compl. ¶ 3. As the Supreme Court has made clear, "[i]t would require the suspension

of disbelief to ascribe to Congress the design to allow its careful and thorough . . . scheme to be circumvented by artful pleading." *Brown v. GSA*, 425 U.S. 820, 833 (1976). Indeed, to accept Synopsys's argument to appeal decisions of this sort as a challenge a policy or practice would eviscerate Congress's intent to foreclose appeals because clever lawyers can always recast a substantive challenge to an order as a challenge to a policy or practice. Accordingly, Synopsys' attempt to use artful pleading to circumvent the statutory bar to judicial review must fail.[23]

## IV.

In sum, the statutory scheme discloses Congress's intent to preclude judicial review of the Director's decision to vacate its *ex parte* reexamination order on the ground that two of Synopsys's challenges were estopped. Accordingly, the merits of this case cannot be reached or addressed, and the appeal is properly dismissed.

An appropriate order will issue.

Alexandria, Virginia
November 15, 2017

T. S. Ellis, III
United States District Judge

---

[23] Although the parties do not cite them, *Heckler v. Ringer*, 466 U.S. 602 (1984), and *McNary v. Haitian Refugee Ctr. Inc.*, 498 U.S. 479 (1991), are instructive on this point but are of no avail to plaintiff. These decisions are not contrary to the conclusions reached here. In those cases, the Supreme Court considered when plaintiffs can evade jurisdictional requirements, such as exhaustion, by challenging agency policies and practices. Specifically, *McNary* and *Heckler* stand for the proposition that, when judicial review is otherwise barred, federal courts can exercise jurisdiction to review agency policies or practices that are not necessary to the ultimate merits determination. *Compare McNary*, 466 U.S. at 495 (allowing for a challenge of interview procedures because that challenge would not substantively decide the merits of plaintiffs' case), *with Heckler*, 466 U.S. at 494-95 (declining to exercise judicial review because "success in the respondents' challenge of the Secretary's policy would have the practical effect of also deciding their claims for benefits on the merits."). Here, even assuming the PTO's interpretation of § 315(e) is properly characterized as a "policy," it is unquestionably necessary to, and dispositive of, the merits of Director's ultimate estoppel determination. Thus, both *Heckler* and *McNary* support the conclusion reached here. In the end, to exercise jurisdiction over Synopsys's challenge to the PTO's interpretation of § 315(e) would effectively eliminate the statute's carefully constructed bar to judicial review.